CHARLES RIPLEY *vs.* NATHAN DOLBIER.

If one legally in the possession of the personal property of another, misuse that property, it is a conversion thereof, and the owner may immediately maintain trover therefor.

The debtor can impart to another no rights to such property superior to his own.

Where a horse was conveyed to the plaintiff as security for a debt, to be paid in one year, and where there was an understanding between the parties, although not expressed in the bill of sale, that the debtor should retain the possession during the year; *it was held*, that any such management with the horse during the year as would unnecessarily injure his value, would be a violation of the agreement for his use, and would put an end to any right of the debtor to his possession.

EXCEPTIONS from the Western District Court, WHITMAN J. presiding.

Trover for a horse. The exceptions state, that the plaintiff introduced a paper of which the following is a copy:

" This certifies that I have this day sold and delivered to *Chas.*

*Ripley* one stud horse, of a bright bay color, with a white star in the forehead ; the same is imported *French* and *Indian* horse — that I deliver the same to *Charles Ripley* free and clear from all incumbrance — now providing that I, *Orrin Dyer*, pay to *Charles Ripley* the sum of seventy-five dollars in one year from date the horse is mine.

"*Orrin Dyer.*"

Evidence was introduced on both sides showing that the plaintiff exchanged the horse in question with *Dyer* for a mare, and for the greater value of the horse took the paper to secure him for the difference, which was to be paid in one year from date ; that the horse was recommended by the plaintiff as valuable for stock ; and that *Dyer* would obtain the sum due plaintiff in the use of the horse ; he also recommended him as suitable for labor, for which purpose he had been much used ; that it was the understanding, that *Dyer* should have the possession and use of the horse for one year ; and that after the exchange, *Dyer* permitted the defendant to have the horse in question for labor, but there was no sale. There was no evidence that defendant knew of the lien of the plaintiff on the horse. *Dyer* testified that he permitted the defendant to castrate the horse, if he chose. Defendant caused him to be castrated in *June*, 1838. Evidence was adduced that the plaintiff was informed of the alteration, and after that, obtained the writ in this action, and went and demanded the horse of the defendant, but showed no evidence of a claim and declined so to do, unless the defendant would show him the horse when called on by the plaintiff, but the defendant told him that the horse was in his pasture, and he might take him, but if he had any claim on account of a bargain between him and *Dyer*, to go to *Dyer*. Before this conversation, and on the same day, the plaintiff had been into the pasture of defendant, and said he could not find the horse, and gave this as a reason for not searching further for the horse in the pasture, and without any further examination or delay left. Evidence was introduced by the defendant tending to show that the horse was more valuable as a gelding than a stud, and by the plaintiff that the alteration lessened his value.

Under this evidence the Judge instructed the jury, that if the defendant, though ignorant of the plaintiff's claim, used the horse

for any purpose different from that contemplated by plaintiff and *Dyer* in the trade, or if he caused any alteration diminishing the worth of the horse, which impaired the security of the plaintiff, though within one year, it would be a conversion, and the defendant would be liable in this action, after a demand by the plaintiff, and a refusal by the defendant. The jury returned a verdict for the plaintiff. To which instructions of the Judge the defendant excepted.

*Tenney* and *H. Belcher* argued for the defendant.

*R. Goodenow,* for the plaintiff, in his argument, cited *Lunt* v. *Whitaker,* 1 *Fairf.* 310; *Tibbetts* v. *Towle,* 3 *Fairf.* 341.

The opinion of the Court was by

SHEPLEY J. — The contract does not in terms secure to *Dyer* the use of the horse until payment was made. It is silent on that subject. Admitting however, that it was the intention of the parties to it that he should have the use of him for the year, he would not thereby be authorized so to conduct as to injure unnecessarily his value. The design of the contract was to secure the plaintiff, and they could not have intended to allow one party to defeat it. Such conduct would be a violation of any implied agreement for the use of the horse, and would put an end to his right of possession. If one legally in possession of the property of another, misuse that property, it is a conversion of it. *Mulgrave* v. *Ogden, Cro. Eliz.* 219; *Richardson* v. *Atkinson,* 1 *Stra.* 576; *Syeds* v. *Hay,* 4 *T. R.* 260. The defendant could have no rights superior to those of *Dyer.*

*Exceptions overruled.*